## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JASON SANCHEZ,

      Plaintiff,

v.

                                              Case No. 2:25-cv-00226-MIS-GJF

MIKE GALLAGHER, individually
and in his official capacity, and
EDDY COUNTY BOARD OF
COMMISSIONERS,

      Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED IN PART ON QUALIFIED IMMUNITY

**THIS MATTER** is before the Court on Defendants Mike Gallagher ("Gallagher") and Eddy County Board of Commissioners ("Board," and collectively, "Defendants")' Motion for Summary Judgment Based in Part on Qualified Immunity ("Motion"), ECF No. 6, filed April 2, 2025. Plaintiff Jason Sanchez ("Plaintiff") filed a Response on April 16, 2025 ("Response"), ECF No. 10, to which Defendants filed a Reply on April 29, 2025 ("Reply"), ECF No. 13. Plaintiff filed a Sur-Reply on May 5, 2025 ("Sur-Reply"). ECF No. 17. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **DENY** the Motion.

## I.    Introduction[1]

Plaintiff is currently a resident of Texas, but used to live in Eddy County, New Mexico. Compl. ¶ 1, ECF No. 1. Gallagher is the County Manager of Eddy County. Id. ¶ 2. As County Manager, Gallagher oversees day-to-day operations and all of Eddy County's government

---

[1] Unless otherwise indicated, the information contained in this section is gleaned from the Complaint and is included solely to frame the issues raised by Defendants.

departments.  Id.  Gallagher attends the Board's meetings that take place once every two weeks and is the ultimate decisionmaker as to which comments from the public are heard at Board meetings.  Id.

With the exception of certain matters that are discussed in private during Executive Session—like litigation or employment negotiations—Board meetings are open to the public.  Id. ¶ 10.  The public may attend the meetings in person or watch them online.  Id.  At the beginning of each Board meeting members of the public may speak to the Board, for up to three minutes each, about matters of public concern.  Id. ¶ 11.

Until recently, the Board solicited comments through a portal available on Eddy County's website and Facebook page, through which anybody could submit a comment to be read at a Board meeting.  Id. ¶ 13.  The website portal specifically noted that written comments were preferable to in-person comments.  Id. ¶ 14.  Customarily, Gallagher (or someone else) would read the written comments at the beginning of the Board meeting.  Id. ¶ 16.

On February 25, 2025, Plaintiff submitted a written comment ("Comment") through the portal to be read at the next Board meeting, which was scheduled for March 4, 2025.  Id. ¶ 17. Plaintiff's Comment concerned public corruption at the Eddy County Sheriff's Office ("ECSO")— specifically, Plaintiff questioned the integrity of certain ECSO employees, including Sheriff Matthew Hutchinson and Undersheriff Mark Cage.  Id. ¶ 18.  If read aloud, Plaintiff's comment would have been less than three minutes long; it did not contain profanity, promote his personal business interests, or encourage violence.  Id. ¶ 19.

On March 3, 2025, Plaintiff noticed that the County had disabled the online system for submitting comments to be read at Board meetings.  Id. ¶ 21.  Plaintiff alleges that the decision to

disable the online submission of comments was made either by Gallagher or by someone acting with authority granted by Gallagher.  Id. ¶ 22.

The March 4, 2025 Board meeting lasted approximately three hours.  Id. ¶ 23.  Despite being properly submitted through the portal, no part of Plaintiff's Comment was read during the meeting.  Id. ¶ 24.  Plaintiff alleges that Gallagher and others decided not to read Plaintiff's Comment because they wanted to protect Matthew Hutchinson, Mark Cage, and others in the ECSO from criticism or embarrassment.  Id. ¶ 26.  Plaintiff also believes that Defendants removed the online comment submission process because they knew Plaintiff lived in Texas, knew that it would be difficult for him to attend Board meetings in person, and wanted to prevent Plaintiff from being able to voice his concerns about public corruption in Eddy County.  Id. ¶ 27.

On March 5, 2025, Plaintiff filed this lawsuit against Gallagher and the Board alleging viewpoint discrimination in violation of the New Mexico and United States Constitutions.  See id. ¶¶ 28-47.  Count I of the Complaint asserts a claim against the Board under the New Mexico Civil Rights Act ("NMCRA"), N.M. Stat. Ann. § 41-4A-3, for violations of Plaintiff's free speech rights under Article II, Section 17 of the New Mexico Constitution.  Id. ¶¶ 30-41.  Count II asserts a claim against the Board and Gallagher under 42 U.S.C. § 1983 for violations of Plaintiff's free speech rights under the First Amendment to the U.S. Constitution.  Id. ¶¶ 42-47.  On March 31, 2025, Defendants filed an Answer to the Complaint.  ECF No. 4.

On April 2, 2025—before the commencement of discovery—Defendants filed the instant Motion for Summary Judgment.  ECF No. 6.  Plaintiff filed a Response, ECF No. 10, to which Defendants filed a Reply, ECF No. 13.  Plaintiff subsequently filed a Sur-Reply.  ECF No. 17.

II.    **Legal Standards**

a.    **Rule 56**

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to point the court to record evidence of facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). A fact is "material" if under the substantive law it is essential to the proper disposition of the claim. Id. at 248. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the nonmovant must "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [their] case in order to survive summary judgment." Johnson v. Mullin, 422 F.3d 1184, 1187 (10th Cir. 2005) (quoting McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).

It is not the court's role to weigh the evidence or assess the credibility of witnesses in ruling on a motion for summary judgment. See Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012), abrogated on other grounds by Muldrow v. City of St. Louis, 601 U.S. 346, 355

4

(2024). Rather, the court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999); see also Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). However, summary judgment may nevertheless be granted where "the evidence is merely colorable, or is not significantly probative." Liberty Lobby, 477 U.S. at 249-50 (internal citations omitted).

### b.     Qualified immunity

The doctrine of qualified immunity protects government officials sued in their individual capacity from liability for monetary damages unless their actions violate a "clearly established" statutory or constitutional right. City of Escondido v. Emmons, 586 U.S. 38, 42 (2019) (quoting Kisela v. Hughes, 584 U.S. 100, 104 (2018)). A right is clearly established only when, at the time of the challenged conduct, "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he [or she] was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014).

"A plaintiff can demonstrate that a constitutional right is clearly established 'by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.'" Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting Anderson v. Blake, 469 F.3d 910, 914 (10th Cir. 2006)). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (internal citations and quotation marks omitted). Although the plaintiff is not required to identify a case "perfectly on-point[,]" Quinn v. Young, 780 F.3d 998, 1005 (10th Cir. 2015), "existing precedent must have placed the statutory or constitutional question beyond debate." Kisela, 584 U.S. at 104 (quoting White v. Pauly, 580 U.S. 73, 79 (2017)). Clearly

established law cannot be defined "at a high level of generality"; rather, it must be particularized to the facts of the case.  Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987).  But "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  Quinn, 780 F.3d at 1005 (quoting Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007)).  The dispositive question is whether the unlawfulness of the official's actions was apparent in light of pre-existing law.  See Creighton, 483 U.S. at 640.

When a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established."  Kapinski v. City of Albuquerque, 964 F.3d 900, 905 (10th Cir. 2020) (quoting Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011)).  The court may address these two inquiries in any order.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); McCowan v. Morales, 945 F.3d 1276, 1282 (10th Cir. 2019).  If the plaintiff fails to satisfy either part of the test, the court must grant qualified immunity.  McCowan, 945 F.3d at 1282 (quoting Est. of Ceballos v. Husk, 919 F.3d 1204, 1212-13 (10th Cir. 2019)).  If the plaintiff succeeds, then—and only then—does the defendant bear the traditional burden of the movant for summary judgment.  Kapinski, 964 F.3d at 905 (quoting Koch, 660 F.3d at 1238).

**III.    Facts[2]**

As a result of the COVID-19 pandemic, on or about April 9, 2020, Eddy County created a public comment form that was made available through a link on the Board's webpage on the County's website and through a link posted on Facebook.  Defs.' Facts ¶ 1.  The public comment form stated:

> In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments. Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices.

Id. ¶ 2.

In January 2025, Gallagher became Eddy County's new County Manager.  Id. ¶ 7.  Because the public health orders related to social distancing under COVID had been rescinded, Gallagher determined that an on-line public comment form was no longer needed.  Id. ¶ 8.  Thus, on February 7, 2025, Gallagher instructed Eddy County staff to remove the public comment form from the County's website.  Id. ¶ 9.  The same day, Andrew Medrano removed the link to the public comment form from the Board's webpage; however, the form was still available through a link on the County's "How Do I" drop down menu, which Medrano had no knowledge of.  See id. ¶¶ 12,

---

[2]    The following facts are gleaned from Defendants' Statement of Undisputed Material Facts, which is incorporated into their Motion, ("Defs.' Facts"), ECF No. 6 at 2-5; Plaintiff's Response to Defendants' Facts ("Pl.'s Resp. Facts"), ECF No. 10 at 3-4; Plaintiff's Additional Undisputed Material Facts ("Pl.'s Add'l Facts"), id. at 5-7; Defendants' Reply to Plaintiff's Response to Defendants' Facts ("Defs.' Reply Facts"), ECF No. 13 at 3-4; and Defendants' Response to Plaintiff's Additional Facts ("Defs.' Resp. to Pl.'s Add'l Facts"), id. at 4-7.  All facts are undisputed unless otherwise noted.  To the extent that certain facts are omitted from this section, the Court deems those facts to be immaterial to its disposition.

17; Pl.'s Resp. Facts ¶¶ 12, 17; Aff. Andrew Medrano ("Medrano Aff.") ¶¶ 13, 17, ECF No. 6-1.[3]

A link to the form may also have been available through old Facebook posts. Defs.' Facts ¶ 18.[4]

On February 25, 2025, Plaintiff accessed the public comment form on the Board's website through a link on the Board's Facebook page and submitted a public comment to be read at the next meeting, which was scheduled for March 4, 2025. Pl.'s Add'l Facts ¶¶ 6-10. In his Comment, Plaintiff expressed concern about abuse of power by Eddy County law enforcement after he was wrongfully convicted of a crime, id. ¶ 12; the Comment states that he was later "exonerated" of wrongdoing, see Comment, ECF No. 10-1 at 6. The Comment contained no profanity and would have taken less than three minutes to read out loud in its entirety. Pl.'s Add'l Facts ¶ 11, ECF No. 10. Shortly after submitting his Comment, Plaintiff received an email notification from Eddy County which contained the same language as the public comment form; specifically:

> In an effort to comply with public health orders, the number of persons attending the Eddy County Board of Commissioners meeting will be limited, but in person public comments are possible. The preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting. Please complete the online form below to submit your comments. Individuals wishing to make in person Public Comments need to be in good health and follow recommended practices.

Id. ¶¶ 13-14 (quoting email from noreply@civicplus.com to Jason Sanchez (Feb. 25, 2025, 21:33 CST), ECF No. 10-1 at 5) (italics omitted).

---

[3]    Plaintiff purports to dispute that Medrano "removed" the link to the public comment form because it was still available on the County's website. See Pl.'s Resp. Facts ¶¶ 12, 17. The Court deems it undisputed that Medrano removed the link to the public comment form from the Board's webpage, even though it was still available elsewhere on the County's website.

[4]    Plaintiff appears to dispute this fact on the grounds that a link to the form was available via the Board's old Facebook posts. See Pl.'s Resp. Facts ¶ 18. In fact, Plaintiff avers that he accessed the public comment form by clicking on a Facebook link. See Decl. Jason Sanchez ("Sanchez Decl.") ¶¶ 4-8, ECF No. 10-1. This purported dispute is immaterial to the Court's disposition.

On February 26, 2025, Andrew Medrano completely removed the public comment form from the County's website; therefore, even if links to the form still exist, the form cannot be accessed. Defs.' Facts ¶ 19.

On March 4, 2025, the Board held its scheduled meeting but did not read Plaintiff's Comment. Pl.'s Add'l Facts ¶ 16.

The last public comment read at a Board meeting was submitted on February 5, 2025, and was read at the February 18, 2025 meeting. Defs.' Facts ¶ 15.

Defendants assert that Gallagher "determined that because no links had been made available to the public to submit a public comment following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025." Id. ¶ 20. Plaintiff disputes this fact on the grounds that a link to the public comment form was still available after February 7, 2025, which is how he was able to submit a comment on February 25, 2025. Pl.'s Resp. Facts ¶ 20.

There is no evidence that prior to February 25, 2025, Gallagher or the County enacted or announced any policy prohibiting written comments from being read at Board meetings. Pl.'s Add'l Facts ¶ 20. There is no evidence that since February 7, 2025, the County has declined to read any written public comment other than the one submitted by Plaintiff. Id. ¶ 21.

## IV. Discussion

Defendants initially argue that Plaintiff's claim under the NMCRA fails because Defendants "passed no law to restrain or abridge the Plaintiff's liberty of speech." Mot. at 6. Rather, Defendants "determined that the submission of online public comments was no longer needed, because the public health orders related to social distancing under COVID was [sic] no longer in place at County Commission meetings." Id. They argue that they attempted to remove

9

the ability to submit public comment forms from the County's website on February 7, 2025,[5] and

"Gallagher determined that because no links had been made available to the public to submit a

public comment form following February 7, 2025, it was not appropriate to read a form submitted

after February 7, 2025." Id. Thus, they argue, Plaintiff cannot establish a violation of Article II,

Section 17 of the New Mexico Constitution because "[t]he decision not to utilize public comment

forms was made 18 days before the Plaintiff submitted his form." Id. Defendants further argue

that Gallagher is entitled to qualified immunity as to the Section 1983 claim because

> [P]laintiff's First Amendment right to free speech was not violated by the
> Defendants. The Plaintiff had no right to have a comment read at the Eddy County
> Commission Meeting once it had been determined that Eddy County would no
> longer utilize public comments submitted online. The decision to stop accepting
> public comments submitted online applied to everyone, not just the Plaintiff. Thus,
> no decision was made with regard to the content of the Plaintiff's speech and the
> Plaintiff cannot establish the first prong of the qualified immunity analysis.

Id. at 9. Defendants also argue that Plaintiff cannot establish the second prong of the qualified

immunity analysis because "[t]here is no Supreme Court or Tenth Circuit decision, or the weight

of authority from other courts, that places this constitutional question beyond debate. . . .

Defendants were unable to locate any case law that determined that the enforcement of a decision

to stop accepting public comment forms violates the Constitution." Id. Defendants further argue

that Plaintiff's municipal liability claim under Monell v. Department of Social Services, 436 U.S.

658 (1978) fails because no First Amendment violation occurred. Id. at 10-11.

Plaintiff argues that Defendants' "content-neutral" explanation for not reading his

Comment is undermined by the fact that the public comment form was still available on the

---

[5]      Defendants' Motion actually states: "On February 7, 2024, the Defendants attempted to remove the
ability to submit public comment forms from the County's website." Mot. at 6, ECF No. 6 (emphasis added) (citing
Defs.' Facts ¶¶ 10-12). However, the facts to which they cite state that they attempted to remove the public comment
forms on February 7, 2025. See Defs.' Facts ¶¶ 10-12.

County's website after February 7, 2025. Resp. at 9. He argues that the fact that Gallagher failed to even investigate how Plaintiff was able to submit a comment when Gallagher had ordered the online form to be disabled, and instead simply declined to read the Comment, "strongly suggests that Gallagher declined to read the comment due to its content and not because of some issue of fairness or propriety." Id. at 9-10 (citing Aff. Mike Gallagher ("Gallagher Aff.") ¶ 9, ECF No. 6-2). Plaintiff argues that "Gallagher's argument boils down to, 'trust me[,]'" but there is ample evidence from which a factfinder could conclude that Gallagher's content-neutral explanation is pretextual. Id. at 10. Specifically:

> Gallagher could see Plaintiff's comment and knew it was critical of Eddy County law enforcement. As a fellow Eddy County employee, Gallagher had reason to protect the reputation of Eddy County law enforcement. If Plaintiff's comment had been complimentary of Gallagher or Eddy County law enforcement, can there be any doubt Gallagher would have read it? Gallagher knew a comment had been read at the February 18 Board meeting; Gallagher knew his IT department had failed to effectuate his request to disable public comments after February 7; and Gallagher knew the public could submit comments as late as February 25 and that the form to do so was still on the Eddy County website and Facebook page. From these facts, it is a perfectly natural inference to draw that Gallagher declined to read Plaintiff's comment because Gallagher disapproved of Plaintiff's viewpoint.

Id. at 10-11. Plaintiff argues that Defendants have submitted no evidence of a content-neutral policy barring Plaintiff's comment from being read at the March 4, 2025 meeting. Id. at 11. Rather, Gallagher's Affidavit states only that he ordered a staff member to remove the public comment form from the County's website, not that the County changed its policy to no longer read written comments at Board meetings. Id. As to qualified immunity, Plaintiff argues that where, as here, a defendant files a motion for summary judgment before discovery, the court "must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." Id. at 12 (first citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998); then citing Janny v. Gamez, 8 F.4th 883, 902 (10th Cir. 2021)). Plaintiff argues that when assuming

11

the truth of his allegations and drawing all inferences in his favor, Gallagher engaged in viewpoint discrimination when he chose not to read Plaintiff's Comment.  Id.  He further argues that "[i]t is 'clearly established' that such viewpoint discrimination violates the First Amendment."  Id. (citing Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828 (1995)).  Plaintiff further argues that at a minimum Defendants' Motion raises material questions of fact on which Plaintiff requires additional discovery under Rule 56(d).  Id. at 13-14 (citing Decl. Curtis Waldo, ECF No. 10-2).  Plaintiff further argues that his Monell claim survives because Gallagher is a final policymaker who chose not to read Plaintiff's Comment based on Gallagher's own purported policy.  Id. at 15.  Finally, Plaintiff argues that genuine issues of material fact preclude summary judgment on his NMCRA claim because "it can be reasonably inferred that Defendants engaged in viewpoint discrimination against Plaintiff when they elected not to read his comment."  Id. at 16.

In their Reply, Defendants initially argue that although the Court must draw reasonable inferences in favor of the non-movant, those inferences must be based on record evidence.  ECF No. 13 at 8 (citations omitted).  They argue that Plaintiff has presented no evidence supporting his argument that Gallagher censored Plaintiff's speech, and the fact that a link to the public comment form remained available after Gallagher ordered it to be taken down is not evidence of content-based censorship.  Id. at 9.  Defendants maintain that the decision to not read comments submitted after February 7, 2025 was made eighteen days before Plaintiff submitted his Comment, and Plaintiff offers no authority supporting his argument that his Comment should have been read just because he was able to submit a comment after that date.  Id.  They further argue that Gallagher was not required to publicly announce his decision to stop reading electronically-submitted comments.  Id. at 10.  As to qualified immunity, Defendants argue that Plaintiff failed to cite any

authority establishing that Gallagher violated clearly established law.  Id.  In this regard, they argue that Plaintiff's citation to Rosenberger for the proposition that the government may not regulate speech based on its substantive content or the message it conveys is too broad of a principle to clearly establish the right Plaintiff is asserting.  Id. (citing Mullenix v. Luna, 577 U.S. 7, 12 (2015)).  Defendants further contend that the Court should not grant Plaintiff's request for discovery under Rule 56(d).  Id. at 10-11.  They argue that when a summary judgment motion is based upon qualified immunity "the non-movant's Rule 56(d) affidavit must also demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion."  Id. at 11 (quoting Lowrey v. Portis, Civ. No. 23-372 JCH/JFR, 2024 U.S. Dist. LEXIS 103959, at *4 (D.N.M. June 11, 2024)).  They argue that Plaintiff's "Counsel's Declaration concerning the discovery will not establish that Defendant Gallagher's decision to stop using the public comment form on February 7, 2025, had anything to do with Plaintiff's First Amendment rights."  Id.  And "Plaintiff has failed to cite any case law that would establish his rights were violated if the County failed to announce an official change in policy concerning the reading of online public comment forms."  Id.  Defendants further argue that the Monell claim fails because Gallagher is entitled to qualified immunity.  Id. (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).  Finally, Defendants argue that the NMCRA claim fails for the same reason that the Section 1983 claim fails.  Id. at 12.

a.    **Qualified immunity**

Qualified immunity is the most logical starting point for the Court's discussion.  As previously stated, when a defendant asserts qualified immunity at the summary judgment stage, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and

(2) the constitutional right was clearly established." <u>Kapinski</u>, 964 F.3d at 905 (quoting <u>Koch</u>, 660 F.3d at 1238).

### 1.    Violation of constitutional right

The First Amendment to the United States Constitution commands that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  "By incorporation through the Fourteenth Amendment, this prohibition applies to states and their political subdivisions." <u>Brewer v. City of Albuquerque</u>, 18 F.4th 1205, 1217 (10th Cir. 2021) (quotation marks and citation omitted).  Furthermore, "the First Amendment applies not only to legislative enactments, but also to less formal governmental acts, including city policies . . . ." <u>Id.</u> (quotation marks and citation omitted).  However, an individual's right to free speech is not absolute and "[e]ven protected speech is not equally permissible in all places and at all times." <u>Snyder v. Phelps</u>, 562 U.S. 443, 456 (2011) (quotation marks and citation omitted).

"Courts use a three-step framework for analyzing the constitutional protections afforded to free speech rights." <u>Mesa v. White</u>, 197 F.3d 1041, 1044 (10th Cir. 1999) (first citing <u>Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.</u>, 473 U.S. 788, 797 (1985); then citing <u>Summum v. Callaghan</u>, 130 F.3d 906, 913 (10th Cir. 1997)).  First, the Court determines whether the plaintiff's claim involves protected speech. <u>Id.</u>  Second, the Court determines the type of forum the alleged First Amendment violation occurred in "because that determination defines in large part the extent to which a government may limit speech in that forum . . . ." <u>Id.</u>  Third, the Court determines whether the defendant's justification for regulating the speech satisfies the requisite standard. <u>Id.</u> at 1045.  Unfortunately, neither party identified, much less analyzed Plaintiff's claim under this standard.

### A.    Protected speech

First, the Court must determine whether Plaintiff's claim involves protected speech.  See id. at 1044.  "[T]he First Amendment's core purposes [are] to protect free and robust discussion of public affairs, hold government officials accountable, and check abuse of power."  Irizarry v. Yehia, 38 F.4th 1282, 1295 (10th Cir. 2022) (footnote omitted); see also NAACP v. Claiborne Hardware Co., 458 U.S. 886, 913 (1982) (observing that the Supreme Court "has recognized that expression on public issues has always rested on the highest rung of the hierarchy of First Amendment values[,]" that "[s]peech concerning public affairs is more than self-expression; it is the essence of self-government[,]" and that "[t]here is a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" (internal quotation marks and citations omitted)).  Here, Plaintiff's Comment states, in its entirety:

> In 2018 my freedom was taken away and it destroyed the parent-child relationship I had with my 2.5 year old son to satisfy the egos of your public officials in Eddy County. I was later exonerated of any wrong doing despite having made this Commission aware of the unethical behavior of Jared Rostro and the ECSO Leadership. No has been held accountable for the crimes committed against me that destroyed the parent-child relation between me and my son.

> I'm not going to sit here and tell you i was the perfect co-parent when I wasn't. Sharing a child can be the most difficult thing when parents cannot get along and go tit for tat yall all knew the charges were false including this commission.

> I am demanding the resignation and/or prosecution of Eddy County Sheriff Matthew Hutchinson, Undersheriff Mark Cage, Capt Eric Threlkeld, and Sgt Jared Rostro for their participation in my frivolous prosecution.

> How many times is Eddy County Sheriff going to allow Rostro to abuse his kids?

> How many times is Eddy County Sheriff going allow Rostro to stalk his ex or harass her despite having a DV Expert?

> How many more people are going to be victimize by Rostro because the Leadership at Eddy County Sheriff is complicit in his unethical behavior?

How many times is Eddy County Sheriff going to allow Threlkeld to testify false in DV hearings?

How many more good LEO must lose their lively hood because the Eddy County Sheriff has to protect Jared Rostro for some reason?

How many times is Eddy County Sheriff Leadership going to allow Rostro and their actions destroy the Eddy County Sheriff's Office Institution?

How many more times is Eddy County Sheriff and Eddy County going to allow Mark Cage to lie on financial disclosures for personal gain?

How more times is President of Affirming Heart Victim Services Amy Dugas going to let Jared Rostro victimize his children and ex wife?

Thank you for time and the public awakes your response to this troubling matter.

Sir Eddy County Exposed

ECF No. 10-1 at 6-7. The Court finds that Plaintiff's Comment, which alleges corruption, impropriety, and malfeasance at the Eddy County Sheriff's Office, falls within the First Amendment's protections. See Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007) (stating that the plaintiff "was engaged in constitutionally protected activity when he alleged government corruption during the public comments portion of the city council meetings"); cf. Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988) (stating that "[s]peech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials, in terms of content, clearly concerns matters of public import" for purposes of determining whether a public employee's speech warrants First Amendment protection).

**B.    Type of forum**

Next, the Court must determine what type of forum the public comment portion of the Board meeting is, "because that determination defines in large part the extent to which a

government may limit speech in that forum and establishes the standard for judicial review[.]"

Mesa, 197 F.3d at 1044.

> The [Supreme] Court has identified three types of speech fora: the traditional public forum, the designated public forum, and the nonpublic forum. Traditional public fora are places that by long tradition have been open to public assembly and debate. In these traditional public fora, the government's right to limit expressive activity is sharply circumscribed. A designated public forum is public property, not constituting a traditional public forum, which the government has intentionally opened to the public for expressive activity. The government is not required to retain the open character of the property indefinitely, but as long as it does so, it is bound by the same standards as apply in a traditional public forum. If the property is not a traditional public forum and it has not been designated as a public forum, it is a nonpublic forum. Access to a nonpublic forum be restricted as long as the restrictions are reasonable and are not an effort to suppress expression merely because public officials oppose the speaker's view.

Verlo v. Martinez, 820 F.3d 1113, 1129 (10th Cir. 2016) (internal quotation marks, citations, and alterations omitted). "[T]he Supreme Court has also recognized that the government can create a 'limited public forum' by allowing 'selective access to some speakers or some types of speech in a nonpublic forum,' while not opening 'the property sufficiently to become a designated public forum.'" Id. at 1129 n.6 (quoting Callaghan, 130 F.3d at 946).

The Tenth Circuit has observed that, under its own precedent, "it is not entirely clear whether" the analogous scenario of a city council meeting should be treated as a "designated public forum" or a "limited public forum." Shero, 510 F.3d at 1202. However, in Griffin v. Bryant, United States District Judge James O. Browning concluded that governing body meetings in the Village of Ruidoso, New Mexico—"and the public input portions in particular"—are limited public forums. 30 F. Supp. 3d 1139, 1178 (D.N.M. 2014). Relying on the Tenth Circuit's analysis in Summum v. City of Ogden, 297 F.3d 995, 1002 (10th Cir. 2002), the Griffin court reasoned:

> Neither the Governing Body meeting as a whole nor the public comment portion constitutes an "intentional opening [of] a nontraditional public forum," Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. at 802, 105 S.Ct. 3439, that

"voluntarily transforms" it "into a traditional public forum," <u>Summum v. City of Ogden</u>, 297 F.3d at 1002. The core pursuit of Governing Body meetings is to make decisions and conduct business on behalf of the municipality. To assist itself in this core pursuit, the Governing Body has chosen to open its meetings to limited public comment so that it can be informed of its constituents' opinions, and, with this information, be better situated to make decisions that are more democratic, and, sometimes, more competent. That having been said, to serve their purpose, Governing Body meetings do not strictly require public input or participation by anyone outside of the Governing Body itself. Although New Mexico state law requires the Governing Body to open its meetings to the public, neither state law nor the Constitution requires it to let the public speak. N.M. Stat. Ann. § 10–15–1.

The Governing Body has transformed what would otherwise be a non-forum into some level of speech forum through its Resolutions, which provide, among other things, for a public input period. The provisions in the Resolutions do not, however, intentionally "bestow[ ] all the free speech rights associated with the traditional public forum, albeit on a potentially temporary basis." <u>Summum v. City of Ogden</u>, 297 F.3d at 1002. The meeting as a whole cannot be a designated forum; designated forums are open to all speech and are subject-neutral, meaning that the government cannot restrict the topics on which individuals speak. The entire structure of the Governing Body meetings restricts subject matter, partitioning different topics— "consent regular items," "planning and zoning," "operation business," "council policies," and "appointments," Village of Ruidoso Resolution 2012–16 at 3—into different segments of the meeting without allowance for overlap. It would be hard for a city council to conduct its business without a similar structure. Even if the public input portion is analyzed on its own, the Court cannot reasonably conclude that the Governing Body has intentionally elevated it to the level of a traditional public forum. The Governing Body has not left open a courtyard to public protest or opened a university classroom to all comers on a first-come-first-served basis. <u>See</u> <u>Widmar v. Vincent</u>, 454 U.S. 263, 265, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (Powell, J.)(holding that where a university "routinely provides University facilities for the meetings of registered organizations," it may not selectively disallow "use for purposes of religious worship or religious teaching" (internal quotation marks omitted)). The Governing Body has placed numerous reasonable restrictions on speakers: they must sign up in advance; they may not speak anonymously; they must provide their address; they must disclose in advance the topic about which they intend to speak; they must present in turn; they are limited to five minutes; they must each begin their speech with a thesis sentence describing their topic; they are subject to the authority of a moderator, and, if they violate the guidelines, then they are directed to cease speaking. <u>See</u> Village of Ruidoso Resolution 2012–16 at 4–5. Moreover, only "resident[s], property owner[s and] business owner[s] in the Village of Ruidoso" may speak in the public comment portion, which fits with the Tenth Circuit's description that "a 'limited public forum' . . . 'arises where the government allows selective access to some speakers or some types of speech.'"

<u>Shero v. City of Grove, Okla.,</u> 510 F.3d at 1202 (quoting <u>Summum v. City of Ogden,</u> 297 F.3d at 1002 n. 4).

> Although a number of courts have followed the Tenth Circuit's lead in refraining from categorizing city council meetings one way or the other, the Court's conclusion comports with every United States Court of Appeals that has decided the issue: the Fourth, Fifth, Ninth, and Eleventh Circuits. <u>See</u> <u>Fairchild v. Liberty Independent Sch. Dist.</u>, 597 F.3d 747, 759 (5th Cir.2010) ("The Board meeting here—and the comment session in particular—is a limited public forum 'for the limited time and topic of the meeting.'" (footnote omitted)); <u>Steinberg v. Chesterfield Cnty. Planning Comm'n</u>, 527 F.3d 377, 385 (4th Cir.2008) ("In this case the parties agree that the Commission's public meeting was a 'limited public forum,' and we concur in that assessment."); <u>Rowe v. City of Cocoa, Fla.</u>, 358 F.3d 800, 803 (11th Cir.2004) ("As a limited public forum, a city council meeting is not open for endless public commentary speech but instead is simply a limited platform to discuss the topic at hand."); <u>White v. City of Norwalk</u>, 900 F.2d 1421, 1425 (9th Cir.1990) ("[S]uch meetings, once opened, have been regarded as public forums, albeit limited ones." (citations omitted)). <u>See also</u> Terri Day & Erin Bradford, <u>Civility in Government Meetings: Balancing First Amendment, Reputational Interests, and Efficiency</u>, 10 First Amend. L.Rev. 57, 77–78 (2011)(footnotes omitted)("The First, Second, Third, Fifth, Sixth, Eighth, and Tenth Circuit Courts of Appeals have struggled with the distinction between a 'designated public forum' and a 'limited public forum,' and consequently, remain unclear how to categorize public comment sessions." (placing the Fifth Circuit in this category because, although it expressly found that public meetings are limited public forums, it applied an intermediate scrutiny standard closer to the one used for designated public forums)).

<u>Id.</u> at 1179-81 (footnote omitted).  The evidence cited by Plaintiff reflects that the Board's meetings are similar in nature to the Village of Ruidoso's Governing Body meetings.  Specifically, Plaintiff's counsel attaches to his Declaration the Minutes of the Board's May 7, 2024 meeting which reflects that the meeting began with public comments, limited to three minutes each, ECF No. 10-2 at 6-10, although it is unclear whether comments were limited to certain topics.  The Board then went on to government affairs, approving the minutes from the previous Board meeting, an expense report, and purchase card report; considering a new courthouse, detention center, and administrative buildings; reviewing and discussing the County's budget; etc. <u>Id.</u> at 10-20.  Plaintiff

also cites the portion of the County's website that contains the agendas and minutes of prior meetings.  See Resp. at 5 n.5 (citing https://www.co.eddy.nm.us/194/County-Commissioners).

The Court is persuaded by the analysis in <u>Griffin</u> and adopts it.  And, considering the similarities between the Governing Body meetings at issue in <u>Griffin</u> and the Board's meetings in this case, the Court finds that the public comment portion of the Board's meetings are limited public forums for purposes of the First Amendment.  However, the Court's ultimate conclusion does not depend on this finding: for reasons explained below, the Court finds that a genuine issue of material fact exists as to whether Plaintiff experienced viewpoint discrimination, and viewpoint discrimination violates the First Amendment in any forum.  See <u>Schmidt v. Siedel</u>, 717 F. Supp. 3d 1147, 1158 (D. Wyo. 2023) (explaining that the court's "ultimate conclusion" as to whether the plaintiff showed a substantial likelihood of success on the merits of his First Amendment claim did "not hinge on" its finding that the restriction on speech occurred in a limited public forum because the plaintiff "experienced viewpoint discrimination, and viewpoint discrimination is not permissible in limited or designated public forums"); <u>see also</u> <u>Callaghan</u>, 130 F.3d at 917 ("[A]lthough content-based discrimination is permissible in a limited or nonpublic forum if it preserves the purpose of the forum, when the government moves beyond restricting the subject matter of speech and targets 'particular views taken by speakers on a subject,' such viewpoint discrimination is 'presumed impermissible.'" (quoting <u>Rosenberger</u>, 515 U.S. at 829-30)).

### C.    Justification for speech restriction

Finally, the Court must determine whether Gallagher's justification for regulating Plaintiff's speech satisfies the standard that applies to limited public forums.  See <u>Mesa</u>, 197 F.3d at 1044.  "In such a forum, a government entity may impose restrictions on speech that are reasonable and viewpoint neutral."  <u>Pleasant Grove City v. Summum</u>, 555 U.S. 460, 470 (2009)

(citing <u>Good News Club v. Milford Cent. Sch.</u>, 533 U.S. 98, 106-07 (2001)). "Viewpoint discrimination is . . . an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." <u>Rosenberger</u>, 515 U.S. at 829. To succeed on a viewpoint discrimination claim under Section 1983, a plaintiff must show that "the defendant acted with a viewpoint-discriminatory purpose." <u>Pahls v. Thomas</u>, 718 F.3d 1210, 1230 (10th Cir. 2013) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009)). This standard requires the plaintiff to show that (1) "the defendant's individual actions caused viewpoint discrimination to occur," and (2) "that those actions were taken <u>because of</u>, not merely in spite of, plaintiffs' . . . message." <u>Id.</u> at 1230-31 (cleaned up). If the plaintiff makes this showing, the government action is "presumptively unconstitutional and may be justified only if the government proves that [it is] narrowly tailored to serve compelling state interests." <u>Animal Legal Def. Fund v. Kelly</u>, 9 F.4th 1219, 1227 (10th Cir. 2021) (alteration in original) (quoting <u>Nat'l Inst. of Fam. & Life Advocs. v. Becerra</u>, 585 U.S. 755, 766 (2018)); <u>see also</u> <u>id.</u> at 1232 (concluding that the challenged statutory provisions were "viewpoint discriminatory" and, as such, were subject to strict scrutiny).

Here, Gallagher's explanation for not reading Plaintiff's Comment at the March 4, 2025 Board meeting is this: "Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after February 7, 2025." Defs.' Facts ¶ 20, ECF No. 6 (citing Gallagher Aff. ¶ 10, ECF No. 6-2); <u>see also</u> Mot. at 9, ECF No. 6. Although this is a viewpoint-neutral justification for not reading Plaintiff's Comment, the Court finds that a reasonable jury could conclude that this explanation is pretext for viewpoint discrimination.

It is undisputed that on February 25, 2025, Plaintiff submitted his Comment using the online form available on the County's website, which he navigated to using a link on the Board's Facebook page. Pl.'s Add'l Facts ¶¶ 6-9, ECF No. 10. The Comment is critical of the ECSO, accuses Sgt. Jared Rostro of "unethical behavior[,]" accuses the ECSO of being "complicit in [Rostro's] unethical behavior[,]" and accuses Rostro and others within the ECSO of potentially illegal behavior, including malicious prosecution, child abuse, stalking, giving false testimony, and lying on financial disclosures for personal gain. ECF No. 10-1 at 6-7. The Comment also faults the Board for not holding Rostro or the ECSO Leadership "accountable for the crimes committed against" Plaintiff. Id. As such, one could reasonably infer that Gallagher—the County Manager—did not want to make Plaintiff's accusations public.

Although it is undisputed that Gallagher instructed Eddy County staff to remove the online public comment form from the County's website on February 7, 2025, Defs.' Facts ¶ 7, there is no evidence that Gallagher or the County enacted or announced a policy terminating the reading of written comments at Board meetings, Pl.'s Add'l Facts ¶ 20. Indeed, there is no evidence that anyone other than Gallagher knew that public comments would no longer be read at Board meetings.

Furthermore, the County read at least one public comment at the February 18, 2025 Board meeting, Defs.' Facts ¶ 15, which was the Board meeting immediately preceding the March 4, 2025 meeting, and exactly one week before Plaintiff submitted his Comment. See Pl.'s Add'l Facts ¶ 1 (stating that the Board "typically holds meetings every two weeks . . . ."). And until the March 4, 2025 meeting, the County had been reading public comments submitted through the online portal at Board meetings since on or about April 9, 2020—almost five years. See Defs.' Facts ¶ 1.

Even though Plaintiff submitted his Comment after February 7, 2025, the notification email Plaintiff received upon submitting his Comment explicitly stated that "[t]he preference is for written public comments, that are received by 5:00 PM on the day prior to the meeting, which will be read at the meeting."  Email from noreply@civicplus.com to Jason Sanchez (Feb. 25, 2025, 21:33 CST), ECF No. 10-1 at 5 (emphasis added).  Plaintiff submitted his Comment seven days prior to the March 4, 2025 meeting, see Pl.'s Add'l Facts ¶ 16, and Gallagher does not dispute that he received Plaintiff's Comment, see Gallagher Aff. ¶ 9, ECF No. 6-2 (stating "I do not know how the Plaintiff was able to submit a public comment form following February 7, 2025").  However, Plaintiff's Comment was not read at the meeting.  See id. ¶ 10; Pl.'s Add'l Facts ¶ 16.

Viewing the evidence and drawing reasonable inferences in Plaintiff's favor, a reasonable jury could conclude that Gallagher refused to read Plaintiff's Comment at the March 4, 2025 Board meeting because of the viewpoints expressed therein.  Stated differently, a reasonable jury could conclude that Gallagher's viewpoint-neutral explanation for not reading Plaintiff's Comment at the March 4, 2025 Board meeting is pretext for viewpoint discrimination.  See Mesa, 197 F.3d at 1048 (reversing summary judgment in favor of county commissioners because, when viewing the evidence and drawing reasonable inferences in the plaintiff's favor, the commissioners' explanations for not permitting the plaintiff to make a public comment at a commission meeting were pretext for viewpoint discrimination); Cornelius, 473 U.S. at 811-13 (remanding for a determination as to whether the government's posited "facially neutral and valid justifications for exclusion" from a nonpublic forum were "in reality a facade for viewpoint-based discrimination"); Callaghan, 130 F.3d at 920 (reversing dismissal of First Amendment claim and remanding with instructions that the district court "carefully scrutinize the validity of the County's stated reasons for refusing access to the courthouse lawn to ensure that the County's justifications are not simply

post hoc rationalizations or a pretext for viewpoint discrimination" (quotation marks omitted));
MacQuigg v. Albuquerque Pub. Schs. Bd. of Educ., Civ. No. 12-1137 MCA/SCY, 2015 WL
13650030, at *7 (D.N.M. Feb. 6, 2015) (concluding that "a reasonable jury could find that the
justifications offered by Defendant for banning Plaintiff were pretexts masking viewpoint
discrimination, and that Defendant targeted Plaintiff precisely 'because of' Plaintiff's unwelcome
criticism of the Board's administration of APS and of Defendant, personally" (quoting Pahls, 718
F.3d at 1230)); S. Utah Drag Stars v. City of St. George, 677 F. Supp. 3d 1252, 1287 (D. Utah
2023) ("Last-minute policy changes that break from past practice also may support a finding of
pretext: where stated reasons for excluding protected speech are 'of such recent vintage . . . and
such a break with past traditions,' they may be pretexts for content or viewpoint discrimination."
(quoting Mesa, 197 F.3d at 1048)).

　　　　Gallagher does not argue that declining to read Plaintiff's Comment at the March 4, 2025
Board meeting was narrowly tailored to serve a compelling government interest.  Consequently,
the Court finds that Plaintiff has established a genuine issue of material fact as to the first prong of
the qualified immunity analysis: whether Gallagher declined to read Plaintiff's Comment at the
March 4, 2025 meeting without constitutionally adequate justification.  See MacQuigg, 2015 WL
13650030, at *5 (finding that plaintiff established a genuine issue of material fact as to the first
prong of the qualified immunity analysis—"whether he was ejected from the November 4, 2009
[school board meeting] without constitutionally adequate justification"—because "there is a view
of the evidence by which a reasonable jury could find that both of the rationales expressly invoked
by Defendant as justification for ejecting Plaintiff lacked factual support").

2.      **Clearly established right**

If Gallagher refused to read Plaintiff's Comment because of the viewpoints expressed therein, he violated Plaintiff's clearly established constitutional rights.  Specifically, in March of 2025, it was clearly established that "[a]ny government restriction on speech in a limited public forum must . . . be viewpoint neutral."  Shero, 510 F.3d at 1202 (citing Rosenberger, 515 U.S. at 829); see also Pleasant Grove City, 555 U.S. at 470 (same); Chiu v. Plano Indep. Sch. Dist., 260 F.3d 330, 350 (5th Cir. 2001) ("It is well settled that viewpoint discrimination is a clearly established violation of the First Amendment in any forum."); Mesa, 197 F.3d at 1048 (holding that the district court should have denied the defendants' motion for summary judgment because there was evidence that the defendants prevented the plaintiff from speaking at a county commissioner's meeting because of the viewpoints plaintiff intended to express).  Thus, every reasonable government official would have understood that refusing to read Plaintiff's Comment at a Board meeting because of the viewpoints expressed therein violates the First Amendment.

In sum, the Court finds that genuine issues of material fact preclude summary judgment in favor of Gallagher on qualified immunity grounds.

b.      **Monell**

Next Defendants argue that the Board is entitled to summary judgment as to Plaintiff's municipal liability claim.  Mot. at 10-11, ECF No. 6.

"When an officer deprives a citizen of a constitutional right, . . . municipal governments may incur liability under § 1983 when 'the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'"  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002) (quoting Monell, 436 U.S. at 690).  A municipal liability claim has three elements: "(1)

official policy or custom, (2) causation, and (3) state of mind." <u>Schneider v. Grand Junction Police Dep't</u>, 717 F.3d 760, 769 (10th Cir. 2013); <u>see also</u> <u>Burke v. Regalado</u>, 935 F.3d 960, 998 (10th Cir. 2019).

Here, Defendants argue only that Plaintiff's municipal liability claim fails because no First Amendment violation occurred.  Mot. at 10-11 (citing <u>Heller</u>, 475 U.S. at 799).  However, as explained in Section IV(a)(1)(C), <u>supra</u>, genuine issues of material fact exist as to whether a First Amendment violation occurred.  Because Defendants do not argue that the <u>Monell</u> claim fails for any other reason, the <u>Monell</u> claim survives summary judgment.  <u>See</u> <u>Pacheco v. Hopmeier</u>, 770 F. Supp. 2d 1174, 1194 (D.N.M. 2011) ("Defendant School Board argues that the Court should grant summary judgment on Plaintiff's <u>Monell</u> claim, arguing solely at this juncture that Plaintiff cannot sustain a <u>Monell</u> claim because no constitutional violation occurred. . . . Since the Court has found enough evidence to sustain findings of multiple constitutional violations, summary judgment against Plaintiff on his <u>Monell</u> claim is improper at this stage.").

Regardless, viewing the evidence and drawing reasonable inferences in Plaintiff's favor, all three elements are satisfied.  First, "[a] challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is . . . a final decision by a municipal policymaker . . . ." <u>Schneider</u>, 717 F.3d at 770.  In this regard, Defendants appear to concede that Gallagher is the final decisionmaker regarding whether public comments submitted online are read at a Board meeting.  <u>See</u> Mot. at 7, ECF No. 6 ("Defendant Gallagher determined that because no links had been made available to the public to submit a public comment form following February 7, 2025, it was not appropriate to read a form submitted after that date." (citing Defs.' Facts ¶ 20)).

Second, to establish causation, Plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Schneider</u>, 717 F.3d at 770 (quoting <u>Bd.</u>

of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).  Here, Gallagher's decision to not read Plaintiff's Comment at the March 4, 2025 Board meeting caused the deprivation of Plaintiff's First Amendment rights if that decision was based on the viewpoints expressed in the Comment.  See Section IV(a)(1)(C), supra.

Finally, "[a] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  Schneider, 717 F.3d at 770 (quoting Brown, 520 U.S. at 407).  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."  Id. at 771 (quoting Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998)).  Here, the Court has already found that every reasonable government official would have understood that refusing to read Plaintiff's Comment at a Board meeting because of the viewpoints expressed therein violates the First Amendment.  See Section IV(a)(2), supra.  Consequently, the Court finds that a reasonable jury could find that Gallagher acted with deliberate indifference.  As such, the Board is not entitled to summary judgment on Plaintiff's Monell claim.

c.     **New Mexico Civil Rights Act**

Finally, Defendants seek summary judgment on Plaintiff's claim under the NMCRA that alleges the Board violated Plaintiff's free speech rights under Article II, Section 17 of the New Mexico Constitution. Mot. at 5-6.  Article II, Section 17 provides, in relevant part: "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

N.M. Const. art. II, § 17.  Defendants argue that Plaintiff's claim under the NMCRA fails because the Board "passed no law to restrain or abridge the Plaintiff's liberty of speech."  Mot. at 6. Plaintiff argues that viewpoint discrimination offends the New Mexico Constitution just as it does the United States Constitution.  Resp. at 16.

The Court agrees with Plaintiff.  "While the difference in the language used in the First Amendment and Article II, Section 17, may be some evidence that the drafters of the New Mexico Constitution intended a somewhat different scope of protection, [the New Mexico] supreme court has recognized that Article II, Section 17, 'reads substantially the same' as the First Amendment." City of Farmington v. Fawcett, 843 P.2d 839, 846 (N.M. Ct. App. 1992) (quoting Nall v. Baca, 626 P.2d 1280, 1284 (1980)).  See also Coll v. First Am. Title Ins. Co., 642 F.3d 876, 895 (10th Cir. 2011) (citing American Association of People with Disabilities v. Herrera, 690 F. Supp. 2d 1183, 1224 (D.N.M. 2010) for the principle that the "U.S. Constitution's First Amendment freedoms of speech and association are coextensive with protections provided by New Mexico Constitution, art. II, § 17").  Because the protections of Article II, Section 17 are at least coextensive with those of the First Amendment, see Coll, 642 F.3d at 895, the Board may be liable to Plaintiff for viewpoint discrimination under the NMCRA.  Cf. Fawcett, 843 P.2d at 846-47 ("While it is settled constitutional law that state courts may not restrict the protection afforded by the federal Constitution, as interpreted by the United States Supreme Court, they may find greater protection under their state constitutions, even when the language is identical.").  For the reasons discussed in Section IV(a)(1), supra, genuine issues of material fact exist as to whether Defendants violated Plaintiff's rights under Article II, Section 17 of the New Mexico Constitution.

**V.      Conclusion**

Therefore, it is **HEREBY ORDERED** that Defendants' Motion for Summary Judgment

Based in Part on Qualified Immunity, ECF No. 6, is **DENIED**.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE